ELI H. PINKHAM *vs.* CLINTON C. HAYNES et al.

Penobscot.     Opinion October 23, 1907.

*Contracts. Sales. Non-delivery. Vendee's Option. "On or before." Construction.*

On the 30th day of September, 1905, the defendants agreed to deliver to the plaintiff one thousand bushels of potatoes on board cars either at South Winn or North Lincoln Station, on or before November 1, 1905, and on the same day received the sum of $50 on account of same. Two hundred bushels of the potatoes were then stored in a barn four miles distant from North Lincoln and eight hundred bushels were three miles distant. The cars on board of which the potatoes were to be delivered under the terms of the contract, were to be furnished by the plaintiff, but no car was in fact furnished by the plaintiff until the night of October 31, and the defendants were not informed of the arrival of this car at North Lincoln until eleven o'clock in the forenoon of November 1. It would have required five days to move the potatoes to North Lincoln with the two teams ordinarily used by the defendants in their business and the only teams which would have been available for their use on November 1, after receiving plaintiff's notice. The defendants themselves had once furnished a car and offered to perform the contract.

*Held:* (1) That as the cars were to be furnished by the plaintiff it was his right to determine the time when the potatoes should be delivered within the limitation prescribed by the contract.

(2)   That under the natural and ordinary interpretation of the phrase "on or before" used in the contract, and in accordance with the intention of the parties at the time the contract was made, the defendants were entitled to such seasonable notice of the arrival of the plaintiff's cars as would enable them by the use of reasonable diligence to complete the transportation and delivery on the first day of November.

(3)   That the contract was an entire one for the delivery of one thousand bushels of potatoes on or before November 1, and as a reasonable opportunity was not afforded the defendants to perform the contract by a delivery of all, they were under no legal obligation to deliver a part of the potatoes on November 1.

(4)   That the defendants did not intentionally relinquish any rights secured to them by the contract or agree to any modification of its terms respecting the time for delivery, and that the contract failed of performance not by reason of any fault of the defendants, who had themselves once furnished a car and offered to perform it, but by reason of the negligent omission of the plaintiff to give the defendants a reasonable opportunity to complete the performance on or before November 1.

On report.   Judgment for defendants.

Action of assumpsit to recover damages for an alleged breach on the part of the defendants of a contract for the sale and delivery of one thousand bushels of potatoes.   Plea, the general issue.

Tried at the October term, 1906, of the Supreme Judicial Court, Penobscot County.   At the conclusion of the testimony, it was agreed to report the case to the Law Court, " to settle the whole question of law and fact upon so much of the testimony as is legally admissible."

The case appears in the opinion.

*Taber D. Bailey*, for plaintiff.

*P. H. Gillin and Artemus Weatherbee*, for defendants.

SITTING : EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   This is an action of assumpsit to recover damages for an alleged breach on the part of the defendants of the following contract for the sale and delivery of potatoes, viz :

" Lincoln, Maine, Sep. 30, 1905.

"This day sold to E. H. Pinkham 1000 bu. Potatoes to be Green Mountains and good merchantable stock well assorted and

to be delivered on board cars either at South Winn or North Lincoln Station on or before Nov. 1, 1905.

" Rec'd this day on account of above potatoes fifty dollars said potatoes to be paid for at forty cents per bushel.

" C. C. HAYNES,<br>" B. F. WYMAN."

" I hereby agree to take said potatoes if they freeze in the barn after being stored before Nov. 1st, at the said within price.

" E. H. PINKHAM."

The last clause, signed by the plaintiff, expressly agreeing to accept, under the contract, potatoes that might " freeze in the barn after being stored before November 1," appears to have been indorsed on the contract October 7, as a result of a conversation between the parties at that time, when the defendants expressed a fear that the potatoes would freeze in the barn.

The plaintiff avers in his declaration that he was ready to receive the potatoes on the first day of November at North Lincoln and had cars there ready to receive them and requested the defendants to load them, but he alleges that the defendants refused to deliver them. The potatoes were never in fact delivered to the plaintiff, but were sold and delivered to other parties on the second day of November.

It was not in controversy that the cars on board of which the potatoes were to be delivered under the terms of the contract, were to be furnished by the plaintiff, and that it was consequently the right of the plaintiff to determine the time when the potatoes should be delivered within the limitation prescribed by the contract. The defendants state that they acquiesced in the proposition made by the plaintiff Sept. 30, the time the contract was signed, that he "couldn't take the potatoes that day, but would take them as soon as the price advanced so that he could do so at a profit;" and although according to the testimony of the plaintiff himself, the market price of potatoes at Lincoln had so advanced that for at least a week prior to November 1, it was 65 cents a bushel loaded on the cars, there is no evidence that the plaintiff made any effort to obtain cars, or if so, he failed to obtain any, until October 28. He then informed

the defendants, through his agent that "he had ordered the car and that he would let them know when it got there." The car did not arrive until the night of October 31. Howard Pinkham, the plaintiff's brother, testifies that he was "sent by the plaintiff to the defendant Haynes" and that he arrived at Haynes's house "about ten o'clock" the first day of November, the next day after the car arrived. He thus describes the interview between Mr. Haynes and himself: "I told him the car was there and ready for potatoes and I says, "Haven't you got a canvas you can throw right over your load?" We didn't make much talk. I says, "Pretty hard day to haul potatoes," says I. "What time will you be there tomorrow with a load?" He didn't say much. I says, "Probably about nine o'clock?" And he thought it would take until nine o'clock to get there—had to load up. That was all the talk I had with him and came back."

The suggestion of the witness that a canvas might be thrown over the load obviously had reference to the heavy rain that was falling that day. Two hundred bushels of the potatoes were stored in a barn four miles distant from North Lincoln, and eight hundred bushels were three miles distant. It satisfactorily appears from the testimony of the defendants that it was between eleven and twelve o'clock when the interview between Howard Pinkham and Haynes actually took place on November first. It is shown by undisputed evidence that it would have required at least ten well equipped teams to move all of those potatoes before nine o'clock that night, that it was practically impossible to procure so many teams that day, and that it would have required five days to move them with the two teams which it may be inferred from the testimony, were the only ones ordinarily used by them in their business and the only ones which would have been available for their use that afternoon.

The defendant Haynes's testimony in regard to this interview of November 1, does not differ very materially from the plaintiff's. According to his version of it, the plaintiff came to his house about twelve o'clock and told him he had a car, "but it was raining so I couldn't haul the potatoes, but could haul the next day if it didn't rain." He denies that he said he would be ready and commence

hauling the next morning at nine o'clock or that he said in reply to the plaintiff that "that was about as early as he could get around." But in answer to a further inquiry he says: "We couldn't have delivered them on the first of November. We should have started in though, if he had said so, but it would have been impossible."

It appears, however, that Howard Pinkham understood that the defendants would commence hauling on the morning of November 2, and was on the road to North Lincoln at eight o'clock that morning for the purpose of being present to weigh out the potatoes, when the defendant Haynes met him and informed that "they were not going to load the potatoes because the contract had expired."

It is contended in behalf of the plaintiff, that under a reasonable construction of the contract the plaintiff had the privilege of furnishing cars any time up to and including November 1, and if furnished on November 1, the defendants were required to commence hauling and to continue hauling and loading on that and succeeding days until all the potatoes were delivered on board the car.

It is the opinion of the court that such a construction of the contract in this case would neither be in harmony with the natural and ordinary interpretation of the phrase "on or before" used in the contract, nor with the legal rights of the defendants under a contract which must be deemed an entirety, nor consistent with the intention of the parties at the time the contract was made.

With respect to the ordinary signification of the words "on or before," this court has said; "within" a certain period "on or before" a day named, and "at or before" a certain day, are equivalent terms and the rules of construction apply alike to each." *Leader* v. *Plante*, 95 Maine, 341. In New Jersey a question arose in regard to the proper interpretation of these words, in the return of the surveyors fixing the time when a road should be opened, and the court say; "The road cannot be opened in a day; the time for opening it may with propriety, be extended in some cases to many days. . . . . In the present case the words of the return are that the road shall be opened on or before the first day of September next. The natural, legal and correct construction of

these words is that the surveyor shall open the road between the day of the return and the first day of September." Matter of Public Road in M. & M. Counties, 4 N. J. L. 329, *290.

So in the case at bar the defendants were entitled to notice of the arrival of the cars furnished by the plaintiff and of his readiness to receive the potatoes in season to enable them to complete the delivery of all the potatoes before the close of the first day of November. They had been ready and willing to deliver them long before that time. It satisfactorily appears that on the seventh day of October, when the indorsement in regard to freezing was made on the contract, the defendants informed the plaintiff that there happened to be an extra car at their disposal at South Winn and they would prefer to deliver the potatoes at that time and place. But the plaintiff, while not objecting to the delivery at South Winn " said he couldn't take the potatoes then because he had his storehouse full in Portland and couldn't handle them, but would take them the last of next week or the first week after." As already stated they heard nothing further from him until October 28, and received no notice of the arrival of a car until about 12 o'clock on the first day of November. Even this notice was not accompanied with a distinct request that the delivery of the potatoes should be commenced that day. It is quite evident that the plaintiff did not desire a delivery of any part of the potatoes on that inclement day, but hoped and perhaps expected that the defendants would not insist upon the terms of the contract respecting the time of delivery, but would commence to haul the next morning. The defendants, it is true, state that they should have commenced hauling the afternoon of November 1st, if the plaintiff " had said so." But the plaintiff did not request it, and it is not shown that the plaintiff was induced by any evasive answer or by the silence of the defendant Haynes at the interview of November 1, to take any course to his detriment which he would not otherwise have taken. He knew that it was not possible for the defendants to deliver all of the potatoes that afternoon and he did not ask them to deliver any of them. As indicated by their testimony the defendants may have understood that if requested it would have been their

duty, under the contract to deliver such part of the potatoes as it was practicable for them to haul that afternoon; and while it is a sufficient answer that in fact they were not requested to deliver any part of them that day, it is proper to observe that this was an entire contract, for the delivery of 1000 bushels, and if a reasonable opportunity was not afforded them to perform the contract by a delivery of all, the defendants were under no legal obligation to deliver a part of the potatoes. Benj. on Sales, sect. 689.

In view of the advance in the price of potatoes the last of October, it is undoubtedly true that the defendants took vigilant note of the plaintiff's procrastination in furnishing cars and in making a request for a delivery, and that they were willing and anxious to be relieved of their obligation under the contract; but they did not intentionally relinquish any rights secured to them by it, or agree to any modification of its terms respecting the time for delivery. That the contract failed of performance was not the fault of the defendants who had themselves once furnished a car and offered to perform it, but of the plaintiff who declined that offer, and negligently omitted to give them a reasonable opportunity to perform it thereafter. See *Frommel* v. *Foss*, 102 Maine, 176.

The entry must accordingly be,

*Judgment for defendants.*